**William Eugene CANTRELL, Appellant,**

v.

**Juanita Kay (Cantrell) ADAMS, Respondent.**

**No. WD 37618.**

Missouri Court of Appeals, Western District.

Aug. 12, 1986.

---

1. All references to Rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

Harold L. Caskey, Butler, for appellant.
Harold A. Kyser, Butler, for respondent.

Before LOWENSTEIN, P.J., and MAN-
FORD and GAITAN, JJ.

GAITAN, Judge.

Petitioner-appellant, William Eugene
Cantrell, appeals the decision of the circuit
court denying his motion to modify custody
of a minor child. The appellant alleges
that the court's decision was against the
weight of the evidence, and as a conse-
quence, the defendant-respondent, Juanita
Kay Adams, should be denied continued
custody of the minor child. We affirm the
judgment of the circuit court.

The facts are not disputed and are sum-
marized in the following paragraphs. The
parties were divorced March 7, 1979, and
by the decree of dissolution, custody of the
parties' elder daughter, Deborah Kay Can-
trell, (hereinafter called Debbie) was given
to appellant, the father, (hereinafter called
Rev. Cantrell), and custody of the parties'
younger daughter, Elizabeth Jolene Can-
trell, (hereinafter called Elizabeth) was giv-
en to respondent, the mother, now Juanita
Kay Adams (hereinafter called Mrs. Ad-
ams). On November 7, 1984 appellant filed
a motion for modification praying that the
custody award be modified to transfer to
him the custody of Elizabeth. Appellant's
motion was denied.

Appellant lives in Austin, Missouri and is
an unpaid pastor of the Pleasant Hill
Church. Respondent lives at 945 North
Kansas Avenue in Springfield, Missouri
and is a cook at a Conoco Restaurant.

After the parties' divorce in 1979, Mrs.
Adams exercised her custody of Elizabeth
and had Debbie live with her from time to
time. Appellant did not object to Debbie's
visits with her mother. The parties and
Debbie had planned for Debbie to attend
the school year in Springfield.

At various times after the parties' di-
vorce, Mrs. Adams lived with men to whom
she was not married. Most recently she
lived for six months with Jackie Lynn Ad-
ams (hereinafter called Mr. Adams) whom
she later married and who was her hus-
band at the time of this hearing.

There is evidence from a home study that
Mr. Adams was arrested and served 32
days in the Greene County Jail for posses-
sion of a deadly weapon. However, there
was no testimony at trial on this matter.

At the time of the hearing, and for two
months prior thereto, Mr. Adams was em-
ployed as "floor maintenance" (bouncer)
and "bar back" (stockman) in a bar called
the Locker Room Lounge.

Mrs. Adams admitted that she has al-
ways permitted Mr. Adams to handle most
of the discipline, including physical disci-
pline. Respondent and Mr. Adams admit-
ted that he has whipped Elizabeth with a
belt and with his hand and had also
whipped Debbie. Debbie and appellant tes-
tified that when Elizabeth came to see

them in the summer of 1983, she had a mark like an arrowhead on her right hip with a bruise about four inches long. Elizabeth told Debbie that their stepfather had caused the bruise by whipping her with a belt. Two weeks later Elizabeth still had the mark. Mrs. Adams admitted that Mr. Adams whipped Elizabeth and bruised her. Mr. Adams denied that he had left a mark with his belt but he admitted that there may possibly have been a bruise. There were other incidents of discipline by the stepfather both before and after the marriage which were not disputed.

The parties agreed that Elizabeth would spend the summer of 1984 with her father at his home in Austin beginning June 20. She was supposed to return to her mother's home in Springfield, Missouri to begin school on September 4, 1984. The parties disagree about who was to transport Elizabeth to her mother's home and when that move was supposed to take place. Debbie testified that she telephoned her mother and asked to stay a couple more days. When that time had passed, Mrs. Adams did not arrive. Mrs. Adams testified that Rev. Cantrell was to be the one to transport Elizabeth to Springfield, either in mid-August or exactly on August 20.

Rev. Cantrell and Debbie testified that he returned Elizabeth to Mrs. Adams' home on the Labor Day holiday, September 3, the day before school was to start. Mrs. Adams was not at her home or even in the state at that time and as a result of her absence, Rev. Cantrell returned home and enrolled Elizabeth in school. The testimony was that on August 22, Mrs. Adams had left Missouri in a truck with her husband destined for Virginia. At that time Mr. Adams was an over-the-road truck driver. She stayed there until September 12 and then went directly to Tulsa, Oklahoma without returning to Missouri.

Mrs. Adams testified that she did not contact appellant, Elizabeth, or Debbie in any manner to advise them prior to her leaving that there would be a period when she would not be at home. Mrs. Adams testified that Rev. Cantrell has no telephone and therefore, she could not contact him. She testified that in the last part of August she contacted the Cass County Sheriff's Department by telephone but was told that they couldn't take a message. She also admitted that she told only Mr. Adams' mother in Springfield about her absence. Rev. Cantrell testified that he has nearby relatives with telephones, as does Mrs. Adams, with whom a message could have been left.

Mrs. Adams testified that she did not return to Missouri until the end of October, and left the state again on October 31. She testified that in mid-January, 1985 her mother-in-law, Hazel Adams, moved her and her husband back to Missouri to live in her home. Mrs. Adams had no contact with Elizabeth and minimum contact with Debbie during this period.

Mrs. Adams was personally served with summons pertaining to this action on February 21, 1985. The next day, February 22, she drove to Cass County and took Elizabeth out of her morning classes. She then took her back to the home of her husband's mother in Springfield where she and her husband were living.

With the possible exception of the respondent's absence from the state which prompted the filing of the motion, there was testimony that both parents took good care of Elizabeth.

Appellant wears a pacemaker for a heart condition and is receiving social security disability benefits for himself and Debbie because he was found to be totally disabled.

There was testimony that Elizabeth had been sexually molested by a neighbor and that she did not inform respondent. Appellant learned of this and also did not inform respondent. According to the evidence, Elizabeth was not suffering psychologically from that occurrence.

█ The scope of review in this matter is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), which states the judgment of the trial court will be affirmed unless there is no substantial evidence to

support it, it was against the weight of the evidence, or the judgment erroneously applied or declared the law. The trial court is in a better position to judge the credibility of witnesses, their character and other tangibles that are not revealed in the trial record. Appellate courts should not set aside a judgment unless it has a firm belief that the decree of judgment is wrong. *H___ v. H___,* 637 S.W.2d 432, 434 (Mo. App.1982).

There is evidence that respondent experienced difficulties from September, 1984 to January, 1985, causing her and her husband to be in Virginia and in Oklahoma.

There was evidence to support the love and affection between respondent and her daughter, Elizabeth. Additionally, there was evidence that showed a very close relationship between Elizabeth and her stepfather. Elizabeth has a disease that effects her hip ball joint and she has to wear a brace. Respondent had her under the care of a specialist in Springfield, Missouri, and was working on getting Elizabeth admitted to the Shrine Hospital for Crippled Children in St. Louis. There was evidence that Elizabeth was a good natured and spirited child. She loved her father, and he properly cared for her as well.

■ While it is proper for the trial court to consider the morals and lifestyle of the parties in a custody proceeding, it is only those cases where moral conduct is such as to directly affect the physical, mental, economic or social well-being of a child that a change is custody is warranted; *H___ v. H___,* 637 S.W.2d 432, 434 (Mo.App.1982), citing *In re Marriage of F___,* 602 S.W.2d 227 (Mo.App.1980). There is no showing of such an impact on Elizabeth. It is for that reason that the appellant's reliance is misplaced when he cites as authority *M.L.G. v. J.E.G.,* 671 S.W.2d 312 (Mo.App.1984). Unlike *M.L.G.,* no harmful effect to Elizabeth was demonstrated nor does this court find that a likelihood of future harmful effect has been demonstrated.

Respondent's conduct between September, 1984 and January, 1985 regarding the care and custody of Elizabeth is worthy of criticism. The trial court considered these facts and it is noted in his findings of fact and conclusions of law that due to circumstances beyond the control of Mrs. Adams, she was unable to return for Elizabeth. The trial court stated:

> [W]hile petitioner claims not to have known where respondent was during the period from September, 1984, through January, 1985, Debra Cantrell talked with respondent by telephone on several occasions and petitioner was aware thereof by being present when Debra talked with respondent; while such informal, unplanned changes in physical custody are not looked upon with favor by this court, respondent knew the children were with petitioner and did check with them by telephone; further, it is noted that petitioner allowed the other daughter, Debra, to be in the physical custody of respondent numerous times since 1979, contrary to the prior order of this court as to custody of Debra. For those reasons, the court finds no change in circumstances which necessitates a modification of the Decree of Dissolution of Marriage as to the custody of Elizabeth Jolene Cantrell.

7. The following additional facts were considered by the court in arriving at the decision made herein: "(a) Elizabeth Jolene Cantrell has an excellent relationship with Hazel Adams, the mother of Jack Adams, who lives in close proximity to Elizabeth; (b) Elizabeth's teacher in Springfield indicated the child is a normal, well-adjusted third-grader who does well in school and has made friends there; (3) all witnesses with first-hand knowledge testified that the relationship between Elizabeth, respondent, and Jack Adams was a good one; (d) that total physical disability of petitioner ..."

The other issue raised by appellant on this appeal concerns the stepfather's criminal record, alleged alcohol problem and discipline. Appellant's argument that respondent's living out of wedlock with men adversely affects the children is without merit. That occurred several years prior to the

hearing. Appellant not only did not object, but allowed both daughters to live with respondent during the school years since that time.

There was evidence that respondent's husband had spent 32 days in jail and had possibly had a drinking problem before their marriage. Appellant failed to explore Mr. Adam's jail time during cross-examination. From that this court concludes that it does not make him an unfit step-parent. Further, there is no evidence that Mr. Adam's is an alcoholic.

There was evidence that Elizabeth had been molested by a neighbor some years before. Appellant knew of this but never informed respondent who was unaware. Upon being informed, respondent had obtained counseling for Elizabeth.

■ The trial court's judgment is supported by substantial evidence and does not erroneously apply nor declare the law. As a consequence, that judgment is affirmed by this court.