Michael K. KEAN,
Plaintiff–Respondent,

v.

Janet S. KEAN, Defendant–Appellant.

No. 15281.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 2, 1988.

Mark Roberts, Salem, for defendant-appellant.

J. Kent Robinson, Ronald D. White, Rolla, Joseph W. Rigler, Salem, for plaintiff-respondent.

FLANIGAN, Presiding Judge.

On August 8, 1986, the trial court entered a decree dissolving the marriage of appellant Janet Kean and respondent Michael Kean. The decree awarded Janet primary custody of their son Christopher ("Chris"), who was born June 21, 1983, and also awarded extensive partial custody to Michael. On December 8, 1986, Michael filed a motion to modify the decree and sought primary custody of Chris. After an evidentiary hearing the trial court, in April 1987, granted the requested modification, subject to reasonable visitation rights of Janet. Janet appeals.

Janet asserts that the trial court erred in transferring primary custody of Chris from her to Michael because "there was no evidence of any negative or detrimental effect on [Chris]" as a result of the alleged behavior of Janet, and that the trial court failed to consider evidence that Michael physically abused Chris.

The judgment of the trial court will be affirmed unless there is no substantial evidence to support it or it was against the weight of the evidence or erroneously applied or declared the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976); *Cantrell v. Adams*, 714 S.W.2d 211, 213–214[1] (Mo.App.1986).

In the trial court it was Michael's burden to show that a change had occurred in the circumstances of Chris or Janet since the entry of the original decree and that modification was necessary to serve the best interests of Chris. *Wilhelmsen v. Peck*, 743 S.W.2d 88, 92[1] (Mo.App.1987); § 452.410 RSMo 1986.

■ While it is proper for the trial court to consider the morals and lifestyle of the parties in a custody proceeding, a change in custody is warranted only where the moral conduct is such as to affect directly the physical, mental, economic or social well-being of the child. *Cantrell v. Adams*, supra, 714 S.W.2d at 214[2]. The change of circumstances of the child or custodian must be significant before a child custody decree may be modified, and the best interest of the child is the paramount concern. *Ferguson v. Wilke*, 713 S.W.2d 611, 614[2] (Mo.App.1986). Although this court has authority to reverse the custody award if it is not in the child's best interests, *Davis v. Davis*, 693 S.W.2d 879, 883[12] (Mo.App.1985), that authority should be exercised with caution and only with a firm belief that the decree is wrong. M___ D___ v. C___ D___, 691 S.W.2d 406, 410[9] (Mo.App.1985).

For the reasons which follow, this court holds that the trial court erred in sustaining Michael's motion to modify and restores primary custody of Chris to Janet in accordance with the provisions of the original decree.

Janet and Michael separated over a year before their marriage was dissolved. Janet, called as an adverse witness by Michael, testified that she met Richard Finnell in October 1986, established a sexual relationship with him three weeks later, and broke up with him in November 1986. She testified that Finnell spent nights with her at her trailer in Rolla, but did so only on the nights when Chris was at Michael's house near St. James.

Janet testified that in January 1987 she met Donald Colvin and later established a sexual relationship with him. She said that she would spend the night at Colvin's house once a week, where the sexual acts occurred, and only on the nights when Chris was at his father's home. At the time of the hearing, held on April 1, 1987, Janet's relationship with Colvin was continuing. She also admitted that on March

13, 1987, several months after Michael filed the motion to modify, she was arrested for driving while intoxicated and the charge was still pending. Colvin was present in the truck being driven by Janet at the time of the incident, but Chris was not present. Janet denied that any sexual acts involving her and Finnell or Colvin had taken place in the presence of Chris.

In support of his motion, Michael presented the testimony of the officer who arrested Janet on the driving charge. Michael also called Donald Colvin as an adverse witness. Colvin testified that he was separated from his wife when he met Janet and he was later divorced. He admitted that he was continuing to have sexual relations with Janet but said that those relations took place at his house and never at Janet's trailer or in the presence of Chris.

Michael then put on a series of witnesses, each of whom testified to participating with Michael in the surveillance of Janet's trailer and her activities.

Dwayne McColgin, a 23–year-old fellow employee of Michael, testified that on November 5, 1986, he and Michael followed Janet to Rolla after Janet had picked up Chris at St. James. At 11:00 p.m., according to McColgin, Janet and Chris met a man outside the Top Hat Lounge. The trio drove to Janet's trailer at 11:20 p.m. and entered it. The lights in the trailer went out an hour later.

Michael's mother, Helen Welch, testified that on November 9, 1986, she and Michael parked near Janet's trailer. At 8:00 p.m. a man entered the trailer and the lights went out at 11:15 p.m. She also testified that on November 14, 1986, she and Michael parked near Janet's trailer at 9:00 p.m. An hour later the same man entered the trailer. At 10:30 p.m. Janet and the man took Chris to a "house on Fourth Street" and then went out to "Mr. Tease." At 1:45 a.m. Janet and the man picked up Chris and took him back to the trailer. The lights went out at 2:15 a.m.

Michael's grandmother, Mary Petty, testified that on November 10, 1986, she and Michael went to Janet's trailer at 6:00 a.m. The lights in the trailer were out. At 9:00 a.m. a man came out of the trailer and left.

Michael testified that on a day in November 1986 he took Chris to Janet's trailer at 7:00 a.m. Chris had spent the previous night with him. Michael saw Finnell lying asleep in Janet's bed.

Michael's stepbrother, Lee Harmon, 14, testified that on February 28, 1987, which was after the motion to modify was filed, he and Michael went to Janet's trailer at 9:30 p.m. At midnight a blue truck arrived, a man got out of it, entered Janet's trailer, and stayed there until 4:00 a.m. while the lights were out. Harmon said he believed Chris was in the trailer.

There was testimony concerning the general living conditions at Janet's trailer and at Michael's house but, except for Michael's criticism of Janet's amours, neither Janet nor Michael claimed that conditions at either residence were unfit for Chris.

Helen Welch testified that when Chris was with Janet, Chris was well-clothed, clean, and had no major health problems. She said, "Janet takes adequate care of Chris's physical needs." Mary Petty testified that when Chris was with Janet, Chris was well-clothed, clean, and healthy.

Although the trial court may have disapproved of Janet's consecutive liaisons with Finnell and Colvin, Michael's professed outrage at those activities has a shakier foundation. Michael admitted that after the dissolution he had "dated" a woman named Kathy and had sexual intercourse with Kathy at her apartment "maybe ten times." Michael said he did not intend to marry Kathy, who was not married. There was evidence that Kathy spent considerable time with Michael and Chris. That evidence was similar to evidence adduced by Michael that Finnell, and later Colvin, spent time with Janet and Chris.

Michael testified that Chris "is basically a pretty good kid," he has no major physical problems or emotional problems, he is well-clothed and well-fed, and is relatively happy.

Michael also admitted that in September 1986 he administered a spanking to Chris

which was excessive and which necessitated a trip to a doctor's office. The incident was investigated by the Division of Family Services, although the investigation, according to the state investigator, did not go further because Chris was in the custody of his mother.

 In short, this record reflects that both of the divorced parents of Chris have established sexual relationships with other persons but there was no evidence that Chris was present during the performance of any sexual act, nor was there evidence that the relationships had an adverse effect upon Chris.

"It is generally accepted that adultery, standing alone, does not require a change of custody of children from one parent to the other. In re Marriage of F_____, 602 S.W.2d 227, 231[3] (Mo.App. 1980). It is only in those instances where the moral conduct of the offending spouse is so gross, promiscuous, open or coupled with other types of antisocial behavior as to directly affect the physical, mental, economic or social well-being of a child that a change is warranted."

*Wilhelmsen v. Peck,* supra, 743 S.W.2d at 93.

This court concludes that the record did not justify transferring the primary custody of Chris from Janet to Michael and that the trial court's order so doing is against the weight of the evidence.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion and with more specific directions contained in the mandate.

HOGAN and PREWITT, JJ., concur.

MAUS, J., concurs in the result.