**Susan Jane SHOEMAKER, Respondent,**

v.

**Glenn Dean SHOEMAKER,**
**Sr., Appellant.**

**No. WD 43604.**

Missouri Court of Appeals,
Western District.

July 2, 1991.

Andrew C. Webb, Sedalia, for appellant.

George R. Lilleston, Clinton, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and FENNER, JJ.

FENNER, Judge.

Glenn Dean Shoemaker appeals a post-dissolution decree denying his Motion to Modify Decree of Dissolution of Marriage which challenged child custody and visitation provisions of the original decree. He also appeals a portion of the post-dissolution decree awarding Susan Jane Shoemaker an increase in child support.

The parties were married in November, 1982. One child, Jason Shoemaker, born to the marriage in April, 1983, is presently and has been the subject of an ongoing dispute between the parties. Within a year after the child was born, the parties separated and Susan Shoemaker filed a Petition for Dissolution of Marriage. A decree of dissolution was entered September 12, 1984, which Glenn Shoemaker appealed to this court, claiming the marriage was not irretrievably broken. This court, in *Shoemaker v. Shoemaker*, 708 S.W.2d 235 (Mo. App.1986), reversed the trial court and remanded the case with directions to enter a decree of legal separation in lieu of the decree of dissolution. On September 8, 1986, the Decree of Legal Separation was converted to a Decree of Dissolution of Marriage. Shortly thereafter, Mr. Shoemaker filed a Motion to Amend Judgment, a Request for Execution and Writ of Execution and a Request for a Change of Judge. The Missouri Supreme Court assigned The Honorable Stephen W. Angle to the case. On September 9, 1987, Mr. Shoemaker filed a Verified Motion for Order to Show Cause alleging that Susan Shoemaker had refused to allow visitation. An Order to Show Cause was entered September 11, 1987. On June 8, 1988, Mr. Shoemaker filed a Motion to Modify the Decree of Dissolution. In pertinent part, the Motion to Modify filed by Mr. Shoemaker alleged that Susan Shoemaker had denied him periods of visitation without offering substitutions for those time periods and that she had enrolled the child in day care for the purpose of denying visitation privileges on Thursdays.

Susan Shoemaker filed an Answer and Counter-motion in response to the Motion to Modify, requesting, among other things, an increase in child support. On June 12, 1990, the trial court heard evidence and subsequently ruled the Motion for Contempt was without merit and denied the Motion for Modification. The trial court found a substantial and continuing change of circumstances existed sufficient to modify the original decree with regard to visitation and support. Glenn Shoemaker now appeals alleging six points of error.

In his first point, Mr. Shoemaker argues that the trial court erred in overruling his Verified Motion for Order to Show Cause because substantial evidence was presented to show that Susan Shoemaker, without good cause, had failed to comply with the specific visitation rights set forth in the decree of dissolution.

The original Decree of Dissolution granted Susan Shoemaker primary custody of the child. Glenn Shoemaker was granted visitation on the first and third weekends of every month from 6:00 p.m. Friday to 6:00 p.m. Sunday. He was also granted visitation on Thursdays of the week, following the weekends of visitation, from 6:00 p.m. Thursday to 6:00 p.m. Friday, until the child commenced public school. Mr. Shoemaker was to have visitation for two consecutive weeks during the months of June, July and August. Custody of the child was to alternate between the parties on Thanksgiving, Christmas and the child's birthday.

Mr. Shoemaker testified that he has been denied Thursday visitation since September of 1987, when the child began attending pre-school. He also testified that he drove some 350 miles round trip three to four times per month to pick up the child and on many occasions he was told the child was ill and no visitation would be allowed.

Mr. Shoemaker cites to § 452.400.3,[1] which requires the court to mandate compliance with the order for visitation and allows the non-custodial parent to file a motion for contempt in the event of non-compliance. If the court finds that the "order for visitation has not been complied with, without good cause, the court shall exercise its discretion in providing a remedy, which shall include, but not be limited to, a compensatory period of visitation or temporary custody at a time convenient for the noncustodial parent not less than the period of time denied,...."

As previously stated, Glenn Shoemaker was originally awarded visitation from 6:00

---

1. All statutory references are to RSMo Supp. 1986, unless otherwise specifically stated.

p.m. Thursday to 6:00 p.m. Friday in the week following the visitation provided for on the first and third calendar weekends of each month, until the child commenced public school. It is Mr. Shoemaker's contention that when Susan Shoemaker enrolled the child in daycare she began denying his Thursday night visitation granted him in the Decree of Dissolution because it was her opinion that the child had commenced public school. He also contends that when the child was ill, Susan Shoemaker denied him visitation, thereby causing him to forfeit his visitation.

 Mr. Shoemaker argues that the trial court was in error for failing to find Susan Shoemaker in contempt and pursuant to § 452.400.3, should have awarded him compensatory visitation or temporary custody for a period of time no less than the period of time denied by Susan Shoemaker. Mr. Shoemaker appears to seize on the language of § 452.400.3 which allows the court to grant compensatory periods of visitation following a finding of contempt. However, pursuant to § 452.400.3, the court, before holding the custodial parent in contempt, must first find an absence of good cause for failure to comply with the visitation order. After hearing the evidence, the trial court found that Susan Shoemaker was not in contempt with regard to the Thursday night visitation problem.

 In matters pertaining to visitation rights, this court gives deference to the trial court's assessment of what serves the best interests of the child and that judgment should be reversed only if it lacks substantial evidence to support it, it is against the weight of the evidence or erroneously declares or applies the law. *Pulliam v. Sutton*, 728 S.W.2d 252, 254 (Mo. App.1987). Furthermore, in child custody and visitation cases, courts are reluctant to impose the harsh sanction of contempt upon a parent absent a finding that disobedience of a court order is willful and intentional. *Shanks v. Shanks*, 603 S.W.2d 46, 48 (Mo.App.1980).

In the present case, there is nothing in the record to suggest that the court con-

sidered anything other than the best interest of the child. Likewise, there exists no evidence that Susan Shoemaker willfully and intentionally set upon a course designed to deprive Glenn Shoemaker of his visitation privileges. On the contrary, there was evidence that Susan Shoemaker, through her attorney, contacted Glenn Shoemaker's attorney in August of 1987, to request consent to alter the visitation period for Thursday evenings so that the child could attend pre-school. Mr. Shoemaker stated that he had no objection to the child attending pre-school, but that his desire was to alter the visitation day in order to substitute for those time periods he would be missing visitation. There is also evidence that Susan Shoemaker did offer alternative visitation on various occasions. Thus, from the evidence, there is nothing to suggest that the trial court erred in failing to hold Susan Shoemaker in contempt for denying visitation without good cause or for willfully or intentionally denying Thursday night visitation.

 Mr. Shoemaker's complaint that Susan Shoemaker denied visitation when the child was ill has no merit and could not, in this case, form the basis for a finding that noncompliance with the visitation order was without good cause. Mr. Shoemaker argues that on three occasions he drove all the way from Sedalia to Joplin, Missouri, and only upon arrival was he informed that the child was ill. However, there is evidence in the record from which the trial court could have found that Mr. Shoemaker was given notice of the child's illness, as in each of the three complained of instances he brought local law enforcement officers along when he attempted to exercise his visitation. The trial court did not err in failing to hold Susan Shoemaker in contempt for any reason alleged by Glenn Shoemaker. Point one is denied.

 Points two and three are taken up together as point three raises an issue which is merely an extension of one of the issues raised in point two. In point two, Mr. Shoemaker argues that the trial court erred in overruling his Motion to Modify the Decree of Dissolution in that it failed to

find a change in circumstances requiring a change of custody. He points to three factors which he believes justified the change in custody, to wit: (1) Susan Shoemaker's interference with his visitation rights; (2) Susan Shoemaker's frequent moves and unstable lifestyle; and (3) Susan Shoemaker's immoral conduct in the presence of the minor child.

■ When custody has been once adjudicated, it is presumed that the custodian remains suitable and the burden of proving a change of circumstance sufficient to call for a change of custody is on the party seeking the change. *Downey v. Downey*, 696 S.W.2d 336, 337 (Mo.App.1985) (citation omitted). Custody should be transferred only where the change of circumstances or conditions are such that the welfare of the child requires it. *Id.*

■ Furthermore, in order for the court to modify child custody, there must be a showing of changed circumstances, which have arisen since the prior decree, which existed at the time of the decree, but were unknown to or concealed from the court. *Eatherton v. Eatherton*, 725 S.W.2d 125, 128 (Mo.App.1987). Additionally, the change in circumstances must be such as to give definite promise that the custody change will substantially benefit the child. *Downey*, 696 S.W.2d at 337.

This court gives deference to the decision of the trial court, recognizing that it is in a better position not only to judge the credibility of the parties directly, but their sincerity and character and other trial intangibles which may not be completely revealed by the record. *Downey*, 696 S.W.2d at 337.

A review of the record reveals that Mr. Shoemaker's evidence fails to satisfy his burden of proof. With respect to his argument that a change of custody was justified because Susan Shoemaker interfered with his visitation rights, there is no need to once again discuss the merits. In point one it was determined that the trial court correctly denied the Motion for Contempt, as the evidence failed to support a finding that there had been a willful and intentional interference with the visitation rights of Mr. Shoemaker. Therefore, a change of custody likewise was not warranted on the basis that Susan Shoemaker interfered with visitation.

■ Mr. Shoemaker points also to evidence which he believes supports a conclusion that Susan Shoemaker's frequent moves and unstable lifestyle warranted a change in custody. There was evidence that Susan Shoemaker moved twice while living in Clinton, Missouri, prior to the time the child began school. She moved to the Joplin, Missouri area when her employer, Schreiber Foods, closed its plant in Clinton. Although she had the opportunity to work for Schreiber Foods in the Joplin area, Susan Shoemaker decided to pursue educational certification as an x-ray technician and attended Missouri Southern College. Susan Shoemaker moved three times in the Joplin area. The child had to change kindergarten schools one time because Susan Shoemaker could not afford to pay out of town fees. The evidence was that the minor child is doing very well in school.

The record does not lend itself to a finding that Susan Shoemaker's frequent moves created an unstable lifestyle for the child such that a change of custody would serve the best interests of the child.

■ Finally, Mr. Shoemaker argues that the evidence of Susan Shoemaker's immoral conduct in the presence of the child supported a change of custody. He points out that Susan Shoemaker lived with a man to whom she was not married following the divorce and that they were never married. He also notes that Susan Shoemaker, at the time of the trial herein, was pregnant and unmarried and that she chooses not to be married.

Susan Shoemaker testified that she lived with and was engaged to a man to whom she was not married following the divorce, but that they no longer live together. At the time of trial, Susan Shoemaker and the child lived with a female roommate. She also testified that she chose to have a second child before medical problems could permanently prohibit her ability to have children. Susan Shoemaker acknowledged

that she had a difficult time with relationships and feels it is best not to remarry.

■ Mr. Shoemaker correctly cites the case of *In re Marriage of P.I.M.*, 665 S.W.2d 670, 672 (Mo.App.1984), for the proposition that the morals of the parents are an appropriate subject for consideration in child custody matters and that grossly immoral conduct on the part of the child's custodian justifies denying custody to that parent. However, while the moral fitness of the custodial parent is a vital factor in determining whether custody should be changed, any immoral behavior must affect the child and the welfare of that child before it would be relevant for purposes of transfer of custody. *Ryan v. Ryan*, 652 S.W.2d 313, 315 (Mo.App.1983).

There is nothing in the record to suggest that the welfare of the child has been or will be adversely affected by any conduct of Susan Shoemaker. Neither of the parties have lead an exemplary life in all respects but, the evidence presented does indicate that the child is well adjusted in his home, school and community.

Because the evidence failed to support a finding that a change of custody would benefit or be in the best interests of the child, points two and three are denied.

■ In point four, Mr. Shoemaker alleges that the trial court erred in sustaining Susan Shoemaker's counter-motion to increase child support obligations. He argues that the evidence before the court failed to support the increase.

After hearing all of the evidence, the trial court modified the original child support award, increasing it from $180 per month to $225 per month. There is no dispute that at the time of the original Decree of Dissolution Mr. Shoemaker was earning $9.55 per hour and at the time of trial was earning $12.17 per hour. He testified that at the time of the divorce he was working overtime. He notes that at the time of trial, even though he was earning a higher rate of pay, he was working fewer hours and no overtime. In addition, he points out that he has remarried and is supporting his wife, his stepdaughter and his son.

As to Susan Shoemaker, the evidence showed that, at the time of trial, she was working at a hospital earning $8.84 per hour, usually 40 hours per week. She testified that she pays health and dental insurance for the child.

Review of the modification order is limited to whether it is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously declares or applies the law. *Walck v. Walck*, 651 S.W.2d 559, 560 (Mo.App.1983).

■ There is no dispute that the needs of the child have increased as have the accompanying costs to fulfill those needs. That he has remarried and is incurring additional expenses as a result is not material. *Hargus v. Hargus*, 222 S.W.2d 964, 966 (Mo.App.1949). Matters of expenses of furnishing a home, food, and clothes incident to supporting a new spouse does not constitute such a change of circumstance or conditions as furnish grounds for modifying support for a minor child. *Id.* Such subsequent obligations voluntarily assumed by Mr. Shoemaker for the new spouse and family do not constitute a defense to such reasonable increase of the allowance for the support of the child of his first marriage, where such increase has become necessary by the child's changed conditions and where his income has increased. *See, Id.*

From the evidence, it cannot be said that the trial court was in error for increasing the amount of child support. Point four is denied.

■ In point five, Mr. Shoemaker argues that the trial court erred in allowing testimony, over objection, as to specific incidents which occurred prior to the divorce. He cites *McCammon v. McCammon*, 680 S.W.2d 196, 202 (Mo.App.1984), wherein it is stated that "On a motion to modify a decree as to child custody, the court should consider only facts which have occurred since the prior decree or that were unknown to the court at the time of that decree."

Susan Shoemaker's attorney advised the trial court that the reason for presenting events occurring before the dissolution was, in part, because the judge was different from the one who heard evidence at the dissolution hearing and a history of the case would provide the new judge with a better understanding of the issues.

■ To the extent that any arguably erroneous questions were allowed or evidence received, in a bench tried case the judge is permitted wide latitude in the reception of evidence. *McCammon*, 680 S.W.2d at 202. The judge is presumed to have considered only proper evidence in reaching his judgment and an appellant, in Mr. Shoemaker's position, must show an absence of substantial competent evidence supporting the judgment to reverse it. *Id.*

There was substantial evidence occurring after the decree of dissolution to support the actions of the trial court. Point five is denied.

■ In his final point, Mr. Shoemaker argues that the trial court erred in allowing Susan Shoemaker to testify, over objection, to the mental state of his brother, who is under the supervision of Fulton State Mental Hospital.

Mr. Shoemaker testified that he is responsible for his brother's financial affairs. He acknowledged that his brother had been charged with a criminal act and had been placed in the Fulton State Mental Hospital for that act. Mr. Shoemaker also testified that if the child were in his custody, the child would be exposed to his brother.

As cited in Susan Shoemaker's brief, § 452.375 lists as a factor to be considered when determining custody in accordance with the best interests of the child, "[t]he mental and physical health of all individuals involved, including any history of abuse of any individuals involved." The evidence was relevant and properly before the trial court.

The judgment of the trial court was not improper for any of the reasons set forth by Mr. Shoemaker. The judgment is, in all respects, affirmed.

All concur.