Sheila J. HUMPHREY,
Respondent/Appellant,

v.

Kurt D. HUMPHREY,
Petitioner/Respondent.

No. 65161.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 8, 1994.

Rehearing Denied Dec. 14, 1994.

marriage on November 8, 1989. The marriage was dissolved on March 1, 1991. The parties entered into an agreement which was approved by the court that granted to the parties joint legal custody, with primary physical custody being awarded to the mother. Father was awarded temporary custody on the weekends of the first, third, and fifth Friday of each month; alternating holidays; and for three two-week periods during the summer (two weeks in each of the months June, July and August).

On the date of the dissolution, mother lived in the home of her stepfather in Lebanon, Missouri. Six or seven months later, her stepfather sold the home, and she moved into a one bedroom apartment in Lebanon. Approximately eight months later, mother moved into a two-bedroom apartment in the same complex.

She remained in the two-bedroom apartment until the beginning of 1993 when she became engaged to marry Michael Williams. She moved into an apartment with Williams in Fayetteville, Arkansas. This out-of-state move occurred without order of the court and without father's written consent. This arrangement continued until April of 1993 when the engagement was broken and she moved back to Lebanon to live with her mother (where she has since remained). She testified that at no time during the course of her relationship with Williams did they have sexual relations in the same room with the child or in the child's presence.

Since the dissolution, mother has had a series of low-paying jobs (except for a period of unemployment when she was recovering from injuries she received in an automobile accident). She testified that she was currently employed as a photographer for a Lebanon newspaper.

Father has remained in the marital home, a trailer on a tract in Franklin County near Washington, Missouri, since the dissolution. He is a long time employee of the Chrysler plant in Fenton, Missouri.

On March 30, 1992, mother filed a motion to modify wherein she alleged changed circumstances and asked the court to enter an order changing father's visitation periods

P. Daniel Billington, Briegel, Baylard, P.C., Union, for appellant.

Gael D. Wood, James W. McGettigan, Jr., Eckelkamp, Eckelkamp, Wood and Kuenzel, Washington, for respondent.

REINHARD, Presiding Judge.

Mother appeals an order of the circuit court granting father's motion to modify that portion of the dissolution decree which pertains to the primary physical custody of the parties' minor child. We reverse and remand to reinstate the original decree with amendment.

The parties were married on September 3, 1988. One child, a daughter, was born of the

during the summer from three two-week periods to three one-week periods. A hearing was set, and then a continuance was granted. On January 19, 1993, father filed a cross-motion (which was later amended) and a motion to cite mother for contempt for violations of his decreed visitation privileges. Prior to the hearing, mother withdrew her motion. The case went to trial on father's motions on September 4, 1993.

In the amended cross-motion, father requested primary custody of the child because it was in the best interest of the child due to substantial and continuing changed circumstances. The changed circumstances he alleged were:

(a) [Mother] has made frequent moves and has not provided the minor child with a stable home environment.

(b) [Father] believes that [mother] has changed her residence to the State of Arkansas, together with the minor child, which constitutes a change of circumstance under Section 452.411, RSMo., allowing the Court to modify the prior custody decree.

(c) [Mother] has repeatedly denied [father's] visitation with the minor child.

(d) [Mother] has failed to devote adequate time to the minor child.

(e) [Father] has the ability and desire to provide the minor child with a stable, loving and nurturing home environment.

After the hearing, the court denied father's motion for contempt but found changed circumstances and entered an order granting primary physical custody of child to the father. Among the court's findings were the following:

(4) The [mother] has moved a number of times, making it very difficult for the [father] to visit his daughter. She was not able to give the Court the dates of her moves so it is impossible to find any stability in her nomadic life style. At one point she even moved the residence of the child to the State of Arkansas without the [father's] or the Court's permission. She was there, by her own admission, for a period of three (3) months. This move did not help make the relationship between [father] and [child] more meaningful. She was for a time living with a man, Michael Williams, to whom she was not married. This could have nothing but an adverse effect on [child]. [Mother's] conduct shows her complete lack of stability. Living in this type of environment is not in the child's best interest.

(5) At the time of the dissolution she was working, since then she has had a number of jobs for short periods of time. At trial she was working for the Lebanon Publishing Co. as a photographer making $5.41 per hour. Most of her jobs have been at or slightly above the minimum wage.

(6) Over the years the parties have not gotten along on the matter of [father's] visitation with [child]. Neither party appears to be completely innocent in the matter. At times [father] would appear late for a scheduled visitation period or would appear at an unscheduled time. At times [mother] would agree to let him have [child] and at other scheduled times she would not. Sometimes she had good reasons and other times she did not. All of this leads the Court to find that [mother] is less likely to allow [child] to have frequent and meaningful contact with the [father]. [Section 452.375.2(8) ]. Therefore as paragraph 3 on that section establishes the state policy to "... assure children frequent and meaningful contact with both parents ..." Further the statute requires, "... the court shall determine the custody arrangement which will best assure that parents share such ... frequent and meaningful contact ... in the best interests of the child under all relevant circumstances."

\* \* \* \* \* \*

(9) The changing the residence of the child from the State of Missouri without an order from this court is deemed [sic] a change in circumstances. [Section 452.377 RSMo.] This Court has jurisdiction as Missouri is now the home state of the child. [Section 452.450.1(1) RSMo.] Further the above facts establish that a change has occurred in the circumstances of the child and her custodian and therefore modification is necessary to served

[sic] the best interests of the child. [Section 452.410 RSMo.]

The court further ordered mother to pay father $30.00 per week for child support.

■ Mother contends on appeal that the evidence does not support a change of primary custody. The decision of the trial court will be affirmed unless: (1) it is unsupported by substantial evidence; (2) it is against the weight of the evidence; or (3) it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Here, the trial court did not err in finding a change of circumstances. Mother testified that she was told by her lawyer that the judge who entered the dissolution decree had given her permission to go to Arkansas. The court, however, found that the removal of the child from the state of Missouri violated § 452.377, RSMo.1986, which reads:

A person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the parties with custody or visitation rights. Where the noncustodial person has been given visitation rights by the custody decree, such court permission may be granted only after notice to the person having visitation rights and after opportunity for hearing. *Violation of a court order under this section may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree.* (Emphasis added).

■ Mother does not challenge the court's finding that there existed changed circumstances due to her move of greater than ninety days to Arkansas; however, she argues that the changed circumstances do not warrant a change in the primary physical custody. In child custody matters the trial court's determination must be given greater deference than in other cases. *Aston v. Aston*, 810 S.W.2d 720, 721 (Mo.App.1991). However, in change of custody cases, a movant must show a change of circumstances of the child or the custodial parent which is significant and directly affects the welfare of the child. *Burden v. Burden*, 811 S.W.2d

818, 820 (Mo.App.1991); § 452.410, RSMo Supp.1993. Once custody has been originally adjudicated, the presumption arises that the custodial parent remains suitable. *Id.* The burden of showing that a change in circumstance warrants a change of custody is on the moving party. Furthermore, even where, as here, there were findings of changed circumstances, the issue remains whether the findings are sufficient to trigger a change of custody. *Clark v. Clark*, 805 S.W.2d 290, 295 (Mo.App.1991).

■ There is much value in allowing children to remain with the parent who has custody as opposed to uprooting them and transporting them to a new home. *Betterton v. Betterton*, 752 S.W.2d 417, 419 (Mo.App. 1988). Children should not be moved from one environment to another upon slight changes of status of the parents. *Clark*, 805 S.W.2d at 295. We will only do so where the changes are such that the welfare of the child requires that custody should be transferred. *Id.*

■ Much of the evidence in this trial centered on father's contention that he was deprived of his visitation rights, especially during the summer. We first note that during the three months mother lived in Arkansas, on only one occasion did she fail to bring child back to Lebanon on a weekend that father had visitation rights. Thus, the move to Arkansas did not significantly affect the visitation rights of father. Furthermore, it appears that the decree was ambiguous as to father's weekend visitation during the summer. While the decree mentioned weekend visitation for mother during father's three two-week periods of custody, the decree is ambiguous as to whether father's weekend visitations are to continue during the summer. Mother's interpretation that his visitation was confined to the three two-week periods had *some* basis. We also note that the court denied father's contempt motion on the visitation issue and that the court found that both parties were at fault on visitation matters. The evidence, some of the court's findings of fact and the contempt result are inconsistent with and fail to support the court's finding "that [mother] is less likely to

allow [child] to have frequent and meaningful contact with the [father]."

■ The court also found that mother was not able to give the court dates on her moves and that her "nomadic life style" made it very difficult for father to visit his child. Additionally, the court found that the move to Arkansas "did not make the relationship between the father and child more meaningful." The evidence concerning mother's frequent moves and lifestyle was not shown to significantly and directly affect the welfare of the child and, therefore, does not support a change in custody. While she could not give the court the exact dates of each move, it is easy to determine the approximate dates from the evidence. Father's contact with child was not shown to be significantly impacted by mother's changes in residence. Further, it appears that the temporary move to Arkansas did not affect father's contact with child except for one weekend.

■ We now take up what we believe to be the primary basis of the trial court's ruling—that the mother lived with a man for three months at a time when the child was in the house. "[T]he morality and lifestyle of the parties, as they bear on the child's welfare, are pertinent factors to be considered in a proceeding to determine whose custody would serve the best interests of the child. The fact that the custodial parent begins living out of wedlock with another can constitute a change of circumstances warranting a change of custody." *Boschert v. Boschert*, 793 S.W.2d 495, 497 (Mo.App.1990) (citations omitted). It is, however, not necessary to wait for manifestation of harmful consequences before action is taken. *Ryan v. Ryan*, 652 S.W.2d 313, 316 (Mo.App.1983).

■ Moral conduct warrants a change of custody only where it affects directly the mental, physical, economic or social well-being of the child. *See, Kean v. Kean*, 754 S.W.2d 922, 923 (Mo.App.1988). It is generally accepted that moral misconduct, standing alone, does not require a change of custody of children from one parent to the other.

It is only in those instances where the moral conduct of the offending spouse is so gross, promiscuous, open or coupled with other anti-social behavior as to directly affect the physical, mental, economic and social well-being of a child that a change is warranted. *Id.* at 925 (quoting *Wilhelmsen v. Peck*, 743 S.W.2d 88, 93 (Mo.App.1987)).

We find the circumstances of this case similar to those of *Shoemaker v. Shoemaker*, 812 S.W.2d 250 (Mo.App.1991). There, father argued, *inter alia*, that a change of custody was warranted by custodial mother's alleged immoral conduct in the presence of the child.[1] In *Shoemaker*, the mother had lived with and was engaged to a man but subsequently discontinued the relationship. The trial court denied father's motion to change custody. On review, the Western District, in affirming, found that there was "nothing in the record to suggest that the welfare of the child [had] been or will be adversely affected by any conduct of [mother]." *Id.* at 255.

In *Boschert, supra,* we affirmed the trial court's modification of custody from mother to father. The mother was living with a man out of wedlock. She testified that she intended to maintain her relationship with him and that she did not intend to marry him. In affirming, we stated:

> ... that aside from mother's change in living arrangements, there was evidence that the daughter expressed concern that mother's companion did not wear clothes to bed. Father's testimony regarding the daughter's confusion and behavioral changes was sufficient to show both a present adverse effect on the child as well as a reasonable likelihood of future damage.

*Id.* at 497.

■ Here, the evidence was that no sexual conduct occurred in front of the child and that the extra-marital living relationship between mother and boyfriend had ceased. In addition, neither the original motion nor the amended motion to the trial court mentioned the issue of moral misconduct. As we deter-

---

1. Similar to this case, father also sought a change of custody for mother's frequent moves, unstable lifestyle and interference with his visita-

tion. As here these allegations were not supported by the evidence. *Id.* at 254.

mined in the somewhat similar case of *Wilson v. Wilson*, 873 S.W.2d 667 (Mo.App.E.D. 1994), neither the trial court's findings nor the evidence supports the conclusion that the welfare of the child necessitates a change of physical custody.

The case is reversed and the cause remanded to the trial court ordering it to reinstate the original decree of dissolution relative to child custody matters except that the court is ordered to amend the decree to clarify father's weekend visitation rights during the summer months.

GARY M. GAERTNER and CRAHAN, JJ., concur.