Pamela Kay (Phillips) MOBLEY,
Appellant,

v.

Marshall Dean PHILLIPS, Respondent.

No. WD 52910.

Missouri Court of Appeals,
Western District.

March 11, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 29, 1997.

**400**

Robert E. Cowherd, Chillicothe, for appellant.

John E. Casey, Brookfield, for respondent.

Before ULRICH, C.J., P.J., and ELLIS and EDWIN H. SMITH, JJ.

PER CURIAM.

Pamela Kay Mobley appeals from an order of the Circuit Court of Livingston County modifying her decree of dissolution of marriage with Marshall Dean Phillips. That modification order transferred custody of their minor son, L.C.P., from Pamela to Marshall and required Pamela to pay child support.

Pamela and Marshall were married on June 25, 1983. They resided in Braymer, Missouri. The couple's only child, L.C.P., was born on February 22, 1985. On July 28, 1986, the marriage of the parties was dissolved by order of the Circuit Court of Livingston County. Pamela was awarded custody of L.C.P., who was one at the time, and Marshall was ordered to pay $150 per month in child support.

On May 5, 1995, Marshall filed a Motion to Modify Decree of Dissolution as to Custody of Minor Child in the Circuit Court of Livingston County, requesting that custody of L.C.P. be transferred from Pamela to himself. The motion also requested that his child support obligation be terminated and that Pamela be required to pay him child support. On June 22, 1995, Pamela filed a Cross–Motion to Modify requesting additional child support and attorney's fees. All of these motions were heard on May 3, 1996. On June 12, 1996, the circuit court issued an order transferring custody of L.C.P. to Marshall and ordering Pamela to pay $376 per month in child support. Pamela brings five points on appeal.

In reviewing modification orders, appellate courts will uphold the trial court's order so long as it is based on substantial evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or misapplication of law. *Stewart v. Stewart*, 905 S.W.2d 114, 116 (Mo.App. W.D.1995). "Nevertheless, there must be an evidentiary basis to support a finding of 'change in circumstances,' which gives the trial court jurisdiction to consider making a change." *Alt v. Alt*, 896 S.W.2d 519, 521 (Mo.App. W.D.1995).

In her first point, Pamela contends the circuit court erred in modifying the dissolution decree to grant custody of L.C.P. to Marshall. She argues there was no evidence of a significant change in circumstances which would justify a transfer of custody.

Under § 452.410.1,[1] a court may not modify a prior custody decree unless it finds, on the basis of facts which have arisen subsequent to the dissolution decree, that (1)

---

**1.** All statutory references are to RSMo 1994 un- less otherwise noted.

a change has occurred in the circumstances of the child or his custodian and (2) a modification of custody is in the best interests of the child. *Rogers v. Rogers,* 923 S.W.2d 381, 383 (Mo.App. W.D.1996). The party awarded custody in the original dissolution decree is presumed to be a suitable custodial parent, and the party seeking to change the custody arrangement bears the burden of proving a change in circumstances of the child or the custodial parent and that modification is necessary to serve the best interests of the child. *Guier v. Guier,* 918 S.W.2d 940, 947 (Mo.App. W.D.1996). "The change in circumstances must be of a nature that the child will substantially benefit from the transfer of custody," and a change in custody "will be made only where the welfare of the child requires that custody should be transferred." *Id.* "Even if there is some showing at a modification hearing that a change of circumstances has occurred, such change must be significant before a child custody decree may be modified." *In re Marriage of D.L.M.,* 783 S.W.2d 473, 474–75 (Mo.App. S.D.1990).

In its Findings of Fact, Conclusions of Law and Judgment, without specifying which of its findings of fact supported its conclusion, the circuit court stated that "a change has occurred in the circumstances of the child and his custodian and that the modification is necessary to serve the best interests of the child." The circuit court primarily appears to rely on evidence that Pamela had sexual relationships during the time between her marriages, and more particularly, that L.C.P. may have been aware that Pamela slept with someone to whom she was not married. The relevant evidence follows.

Pamela and Marshall's marriage was dissolved on July 28, 1986. Pamela was awarded custody of L.C.P., who was one and one-half years old. During the year or so after the dissolution, Pamela reentered the dating scene and went out with a number of men. Viewing the evidence in the light most favorable to the judgment, it can be inferred that she had sex at least once with four of the men she dated and that two of those encounters occurred in her home. L.C.P. was in the house on both occasions, but did not witness the activities. L.C.P. was approximately two years old at the time.

About a year after the dissolution, Pamela began dating Steve Waters. Some time later, they began living together and did so for six to eight months before they married on May 28, 1988. L.C.P. was two or three years old during the time Pamela and Steve lived together out of wedlock, and he continued to live with them throughout the course of their marriage, which ended in dissolution on April 1, 1994. Steve and Pamela had two children during the course of the marriage, both of whom are in Pamela's custody.

In May, 1994, shortly after her marriage to Steve Waters ended, Pamela moved to Kearney, Missouri and accepted a job as assistant vice president and loan supervisor at the First National Bank of Platte County. In Kearney, Pamela, who is Caucasian, began seeing Darryl Mobley, an African/American. In late April or May, 1995, Darryl moved into a downstairs apartment in Pamela's house and resided there until he and Pamela were married in August of 1995. The record reveals that Darryl and Pamela had sex in the downstairs apartment on one occasion when L.C.P. was in the house, but they apparently then decided to abstain until their marriage.

Initially, we observe that Marshall's reliance on Pamela's sexual conduct as a change in circumstances forming a basis for a transfer of custody is rather incongruous. First, Marshall's current wife was three months pregnant with Marshall's child at the time of their marriage. Second, with the exception of Pamela's pre-marital sex with her current husband, all of Pamela's conduct about which Marshall now complains occurred nine to ten years ago, between July 28, 1986 and May 28, 1988. L.C.P. was between one and one-half and three years old at the time. Marshall did nothing at the time. Indeed, he did nothing until May, 1995, shortly after Darryl Mobley moved into the basement apartment of Pamela's house.

Although morals are a factor to consider in determining custody, sexual misconduct is not sufficient in and of itself to deprive a parent of custody. *Hartig v. Hartig,* 738 S.W.2d 160, 161 (Mo.App. E.D.1987); *M.B. v. J.W.B.,* 628 S.W.2d 358 (Mo.App.

E.D.1981). "The issue is not condemnation or approval of a moral standard but whether the conduct is detrimental to the child's welfare." *In re Marriage of Newberry,* 745 S.W.2d 796, 797 (Mo.App. S.D.1988). Moral conduct warrants a change in custody only in those instances where the conduct of the offending spouse is "so gross, promiscuous, open or coupled with other anti-social behavior as to directly affect the physical, mental, economic and social well-being of the child that a change is warranted." *Humphrey v. Humphrey,* 888 S.W.2d 342, 346 (Mo.App. E.D.1994). The record must contain evidence that the parent's conduct has had or will have an adverse impact on the child. *Massman v. Massman,* 784 S.W.2d 848, 849 (Mo.App. E.D.1990).

The trial court relied on *M.L.G. v. J.E.G.,* 671 S.W.2d 312 (Mo.App. W.D.1984), for the proposition that "courts have consistently condemned exposure of children to adulterous and immoral conduct" and that such conduct may constitute a change in circumstances. *M.L.G.* involved a mother who consistently left her ten year old daughter home alone until 10 p.m. to 2 a.m. once or twice a week. Over a period of two years, the mother had five different men spend the night in her apartment. These men were present when the child left for school in the morning. Daughter saw at least one of these strange men in bed with her mother. Mother also took daughter over to her boyfriend's apartment overnight so that mother could sleep with the boyfriend. Mother testified that she intended to continue this pattern of behavior. Psychiatric testimony indicated that daughter was too young to be left alone, that she was extremely frightened and disturbed when this occurred, and that the number of strange men entering her mother's apartment would engender feelings of confusion in daughter. This court found that such neglect and immoral behavior was "likely to lead to severe emotional disturbance" and, therefore, constituted a significant change in circumstances that warranted a change in custody. *Id.* at 316.

In the case at bar, the record shows no similar evidence of neglect or harmful consequences, and the behavior complained of had ceased at the time of the hearing. The record before us contains no evidence that L.C.P. was aware of any misconduct or that this conduct had any adverse effect upon him. *See Klaus v. Klaus,* 509 S.W.2d 479, 481 (Mo.App. E.D.1974). Pamela's non-marital, sexual encounters with the first three men occurred while L.C.P. was three or younger. Nothing in the record indicates that L.C.P. ever saw his mother with the first two men or has any memory of them. While Steve testified that L.C.P. likely saw Pamela and himself in bed together, the couple was married shortly after L.C.P. turned three years old and remained married for almost six years. At ten years of age, L.C.P. was obviously aware that Darryl was living in the basement apartment. Darryl and Pamela both admitted to having had pre-marital sex once while L.C.P. was in the house, but subsequently decided to abstain from this behavior until marriage. The couple was married within five months of Darryl moving into the basement apartment and continue to be married. Reliance on *M.L.G.* is misplaced where, as here, no harmful effect or likelihood of future harmful effect has been demonstrated. *Cantrell v. Adams,* 714 S.W.2d 211, 214 (Mo.App. W.D.1986).[2]

Nothing in the record indicates that L.C.P. has suffered any mental, physical or social problems as a result of his mother's conduct, nor is there any indication that such problems are likely to occur in the future. The record is replete with evidence that L.C.P. is a healthy, well-developed child who does well in school and cares about all the members of his rather extensive family. The evidence relating to Pamela's limited premarital sexual encounters is simply insufficient to support the circuit court's finding of a significant change in circumstances.

2. The circuit court's reliance on *In re Marriage of Campbell,* 868 S.W.2d 148 (Mo.App. S.D.1993), is also misplaced. That case involved an appeal from an original divorce decree awarding custody to the father. The court found the trial court did not err in considering the mother's affairs, before and after separation from the father, as a factor in determining the best interests of the children. *Id.* at 153–54. This language is not applicable to a finding of a significant change in the circumstances in a transfer of custody case.

The only other evidence the trial court noted to support its finding of a change in circumstances is that of Pamela's changes of residence. Since 1986, Pamela has moved five times. The first move occurred two months after her marriage to Marshall was dissolved. The second came after she married Steve. The third move occurred when Pamela and Steve bought a house. When she and Steve separated, Pamela made her fourth move back into her parents' house where she stayed for seven months before moving into her current house. These last two moves required L.C.P. to change schools.

In support of its finding that these moves constituted a significant change in circumstances, the trial court cited *Florea v. Florea*, 688 S.W.2d 373 (Mo.App. E.D.1985). In *Florea*, the trial court found a significant change in circumstances where the mother had changed residences ten times in eight years, had moved the child outside of the state of Missouri without the consent of the court or her ex-spouse, enrolled the child in four or five different schools, and had lived with a man to whom she was not married for four years. *Florea* stated that a move "can be a decisive factor when the move wrenches the child from the security of association with the non-custodial spouse." *Florea*, 688 S.W.2d at 374. The custodial spouse accomplished this when she moved the child to a different state without notifying the non-custodial spouse.

In the case at bar, Pamela never moved out of the state and notified Marshall of all her moves. In fact, all of Pamela's residences were within approximately a forty mile radius of Marshall's home. Since the dissolution of their marriage, Marshall had not missed a single weekend visitation.

More importantly, nothing on the record indicates that these moves have had any adverse affect on L.C.P. L.C.P. enjoys attending school in Kearney, where he receives good grades and is involved in multiple extracurricular activities. L.C.P. told the judge in chambers that he preferred to live and attend school in Kearney. Furthermore, the testimony of Pamela and Darryl indicated that they have no plans to move from the Kearney area. The record simply "does not lend itself to a finding that [Pamela]'s ... moves have created an unstable lifestyle for the child such that a change of custody would serve the best interests of the child." *Shoemaker v. Shoemaker*, 812 S.W.2d 250, 254 (Mo.App. W.D.1991).

Having thoroughly reviewed the record, we are unable to find a sufficient evidentiary basis to warrant removal of the child from the environment into which he was placed by the original divorce decree. *See Shoemaker*, 812 S.W.2d 250 (No significant change where no evidence of likely adverse effect where mother moved six times, lived with a man to whom she was not married, and was pregnant and unmarried at the time of trial.); *Basler v. Basler*, 892 S.W.2d 749 (Mo.App. E.D.1994) (No significant change where mother moved several times, changed children's school several times, and lived with new husband prior to marriage.). Accordingly, we reverse the order of the circuit court transferring custody of L.C.P. to Marshall.

In her second point, Pamela contends the trial court erred in denying her Motion to Modify Child Support. Because of its decision to transfer custody, that motion was never properly considered by the circuit court. For this reason, that motion will need to be taken up by the circuit court upon remand.

In her third point, Pamela argues the circuit court erred in applying the wrong standard when considering her Motion for Attorney's Fees. In its Conclusions of Law, the circuit court cited to *Campbell v. Campbell*, 825 S.W.2d 319 (Mo.App. W.D.1992), for the proposition that an "award of attorney's fees requiring one party to a motion to modify to pay the other party's attorney's fee and litigation expenses is not justified absent a showing of 'very unusual circumstances.'" The circuit court found that "no very unusual circumstances exist which warrant the award of attorney's fees."

This court has expressly rejected the "very unusual circumstances" standard in domestic relations cases brought under Chapter 452. *Leone v. Leone*, 917 S.W.2d 608, 616 (Mo. App. W.D.1996) (citing *Ansevics v. Cashaw*, 881 S.W.2d 247, 251 (Mo.App. W.D.1994)). The appropriate standard for determining an award of attorneys fees in a domestic rela-

tions case is found in § 452.355.1. *Runyan v. Runyan,* 907 S.W.2d 267, 273 (Mo.App. W.D. 1995). That section provides that "[t]he court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment." § 452.355.1. On remand, the circuit court should reconsider Pamela's Motion for Attorney's Fees applying the correct standard of § 452.355.1.

In her fourth point, Pamela claims the trial court erred in not awarding her more extensive visitation rights. Her fifth point asserts that the circuit court miscalculated the amount she should pay in child support. These points are rendered moot by our decision, *supra,* to reverse the circuit court's order transferring custody.

In light of the foregoing, the circuit court's order transferring custody from Pamela to Marshall and ordering Pamela to pay child support to Marshall is reversed, and the cause is remanded to the circuit court to consider Pamela's Cross–Motion to Modify Child Support and Motion for Attorneys Fees.