In re the MARRIAGE OF MAPES.

Ralph E. MAPES, Petitioner–Appellant,

v.

Elnora G. MAPES, Respondent–Respondent.

No. 18258.

Missouri Court of Appeals, Southern District, Division One.

March 10, 1993.

Roy E. Williams, Jr., Henry & Henry, West Plains, for petitioner-appellant.

No respondent's brief filed.

SHRUM, Judge.

In this suit to modify a dissolution decree, Ralph E. Mapes appeals from the trial court's refusal to change the primary custody of his minor daughter from his former wife, Elnora G. Mapes, to him. Two questions are raised on appeal:

I. Did the trial court err in refusing to change custody 63 days after the dissolution in the face of evidence that Elnora deprived Ralph of visitation and impeded his communication with the child and that Elnora, with the child, lived for a time out of wedlock with a male friend?

II. Did the trial court err when it refused to permit Ralph's lawyer to question Elnora's lawyer, as a witness, about whether Elnora's lawyer had forwarded to Elnora two letters written by Ralph's lawyer in which Ralph's lawyer requested visitation for Ralph and a telephone number at which Ralph could contact the child?

We answer the first question in the negative. Regarding the second question, if there was error, it was not prejudicial. We affirm.

## FACTS

On August 25, 1991, while married, Ralph and Elnora moved from West Plains, Missouri, to Copperas Cove, Texas, where Elnora's sister lived. Accompanying them was their daughter, Jessica, born December 3, 1987; Melanie, Ralph's daughter by a previous marriage; and Elnora's older daughter, Angela. Because their intention was a permanent relocation, Ralph promptly returned to Missouri for another load of belongings, returning the following Sunday to Copperas Cove. After "a couple of days," however, he and Elnora decided they would get a divorce. Ralph returned to West Plains, taking Melanie with him. Jessica remained with Elnora. That was the last time Ralph saw or visited with Jessica except for "phone visitation" which he said ceased as of November 1991.

Upon his return to Missouri, Ralph filed a petition for dissolution of marriage. Elnora and Jessica never returned to Missouri; they stayed in Texas. By a separation agreement dated October 2, 1991, Ralph and Elnora agreed that "Elnora ... shall have the primary physical custody of ... Jessica ... subject to reasonable and liberal visitation privileges in Ralph...." The only other provision regarding custody or visitation states, "It is understood that there will be substantial expenses incurred by the parties in connection with exercising of visitation and the transportation arrangements that will have to be made in connection therewith."

The marriage was dissolved on October 21, 1991. In its decree, the court incorporated by reference the separation agreement, including the agreement's provisions for custody and visitation.

On December 23, 1991, sixty-three days after the divorce was granted, Ralph filed a motion to modify the custody provisions of the decree, alleging a change of circumstances. He asked for primary custody of Jessica or, in the alternative, joint legal and joint physical custody, with specific times of visitation and custody for him and specific provisions for his contact and communications with Jessica. Summarized, his motion charged that Elnora had not maintained a good environment or stable home for Jessica, whereas he had a stable home and steady employment; that he had remarried and could now provide day care for Jessica; that Elnora had deprived him of visitation and other meaningful contact and communication with Jessica; that Elnora had attempted to alienate Jessica against him; and that most of Jessica's friends and relatives lived in West Plains and she was well adjusted to living in that community, whereas she was not well adjusted to living in Texas.

At the hearing and over objection, Ralph's attorney elicited from Elnora her testimony that she and her children, including Jessica, lived with a single male (Pat Fernandez) from late November 1991 until March 1992; that she did not advise Ralph of the address of the Fernandez residence; that at other times she and her daughters lived with her sister; that there were telephones at both residences; and that she did

not advise Ralph when she moved from the Fernandez residence back to her sister's.

The trial court made findings of fact, including:

6. That since entry of the Decree, [Elnora] has been antagonistic toward visitation by [Ralph] with the minor child, and [Elnora] has not encouraged frequent and meaningful contact by [Ralph] with the minor child;

7. That [Elnora] has not attempted to initiate contact between the minor child and [Ralph], and has failed to provide current phone numbers and street addresses for the minor child;

....

10. That for a period of time after the dissolution of marriage, [Elnora] resided with the minor child in her boyfriend's home, but [Elnora] and the minor child are presently living with [Elnora's] sister, and plan to shortly move into an apartment;

11. That [Ralph] remarried since the time of dissolution of marriage, and presently resides with his new wife and [Melanie] in Howell County, Missouri;

The trial court concluded there was insufficient evidence of a change of circumstances to support a change of primary custody. The court did, however, find that sufficient changes had occurred to warrant changing visitation rights, which it did by ordering "reasonable and liberal rights of visitation ... including but not limited to" six weeks each summer and one week at Christmas. The court designated who was responsible for transporting Jessica between Texas and Missouri, and it ordered Elnora to keep Ralph continuously apprised of a telephone number at which Jessica could be reached and a street address where Jessica resided. Ralph appealed.

We will provide additional facts in our discussion of Ralph's second point relied on.

## DISCUSSION AND DECISION

In Point I, Ralph would have us convict the trial court of error in its refusal to change primary custody in the face of evidence that he summarizes as follows:

(A) [Elnora] refused to allow Ralph to exercise reasonable visitation privileges with Jessica, lied to Ralph and refused to provide Ralph with a telephone number and street address where Jessica could be reached, and moved from place to place and refused to inform Ralph of her place of residence.

(B) [Elnora] lived with one Pat Fernandez out-of-wedlock in the known presence of Jessica.

(C) [Elnora] moved Jessica out of the marital home and away from her grandparents, relatives and friends, and the West Plains community where Jessica was well adjusted, and relocated her residence to the state of Texas; whereas Ralph has remarried, maintains full-time employment, continues to live in the marital home, and can provide a stable home environment for Jessica.

■ Appellate review in a motion to modify custody case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), which states that the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or the judgment erroneously applies or declares the law. *Cantrell v. Adams*, 714 S.W.2d 211, 213–14 (Mo.App.1986). We give due regard to the opportunity of the trial judge to determine the credibility of witnesses, their character, and other tangibles that are not revealed in the trial record. *Id.* at 214. A trial judge has considerable discretion in making custody orders and an appellate court should not set aside the judgment "unless it is manifestly erroneous and the welfare of the child requires some other disposition." *Burden v. Burden*, 811 S.W.2d 818, 820[4] (Mo.App.1991).

Under § 452.410.1, RSMo Supp.1990, a trial court is not to modify a permanent custody decree unless

it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is

necessary to serve the best interests of the child.

Principles applicable to this point on appeal are succinctly stated in *Burden:*

> To prevail on a motion to modify custody, the moving party must show a change of circumstances of the child or of the custodial parent, not the noncustodial parent, which is significant, directly affecting the welfare of the child. Once custody is adjudicated, the presumption is the custodial parent remains suitable and the burden of showing circumstances which warrant a change of custody is on the moving party.
>
> A child should not be shifted periodically from one home to another unless it is demonstrated by a preponderance of the evidence that the continued well-being of the child requires a change. Even though there may be some showing of a change in circumstances, the change must be significant before the custody decree should be modified.

811 S.W.2d at 820[5–8] (citations omitted).

■ As happened here, it often occurs that an original decree calls for "reasonable and liberal" visitation but the parties soon learn that they are unable to successfully establish or carry out such an undefined and non-specific visitation program. In such instance, Missouri courts are normally liberal on a modification request to establish a specific visitation schedule. 2 Mo. Family Law, § 25.35 (MoBar 4th ed. 1988). Such was the approach followed by the trial court in this case. Based on findings of fact that are supported by the evidence, the trial court modified visitation instead of permanently changing custody. In so doing, it used the "hybrid" approach of awarding "reasonable and liberal visitation" plus specific summer and Christmas holiday visitation, in addition to assigning responsibility for transporting the child to and from Texas and ordering Elnora to provide Ralph with a telephone number and street address for Jessica.

Based on the trial court's findings that correspond to Ralph's subpoints I(A) and I(B), and in light of the court's modification of the visitation provisions, we cannot say the trial court abused its discretion in leaving the child in the primary custody of Elnora.

■ Ralph's complaint embodied in his subpoint I(C) is not supported by the record. Jessica resided in Texas with Elnora at the time of the dissolution. Jessica's presence in Texas and her separation from family and friends in West Plains are not facts that have arisen since the prior decree, and there is nothing in the record to indicate those facts were unknown to the court at the time of the prior decree. *See* § 452.410.1, RSMo Supp.1990. Indeed, the court incorporated into the dissolution decree Ralph and Elnora's separation agreement in which they acknowledged visitation would involve "substantial expenses" and "transportation arrangements."

In Point II Ralph avers that the trial court should have permitted questioning of Elnora's lawyer about whether he had sent her copies of correspondence from Ralph's lawyer relaying Ralph's request for Elnora's telephone number and for visitation with Jessica on the date of the modification hearing. Discussion of Point II requires a recitation of additional facts.

Despite having continuous access to a telephone wherever she lived, Elnora had not at all times provided Ralph a phone number; rather, she advised him of a post office box address through which he could communicate with Jessica. In February 1992, Ralph's lawyer wrote Elnora's lawyer requesting a telephone number, and in April 1992, he wrote relaying Ralph's request for visitation with Jessica on May 1, 1992, the date set for the hearing on the motion to modify.

On the hearing date, Elnora left Jessica with a friend in Arkansas, rather than bringing her to Missouri. At trial Elnora denied any knowledge of Ralph's requests in the letters his attorney wrote to her attorney.

At the close of the hearing, Elnora's lawyer testified about his fees. During cross-examination Ralph's attorney asked him if he had provided Elnora with copies of the letters containing Ralph's requests.

Elnora's lawyer objected, invoking an attorney-client privilege. His objection was sustained. During an offer of proof by Ralph, the trial court again sustained objections by Elnora's lawyer to this line of questioning.

Citing *Delaporte v. Robey Building Supply*, 812 S.W.2d 526, 532 (Mo.App. 1991), Ralph argues that the questions did not seek a "communication" between attorney and client; alternatively, he argues that any response would not have been a "privileged" communication. Further, he maintains that a positive response would have impeached Elnora's credibility, and he asserts that Elnora's truthfulness directly affected her fitness as a parent and was crucial in determining what was in Jessica's best interests.

■ Without deciding whether the questions would have elicited a "communication" or, if so, a "privileged" communication, we conclude that no prejudice resulted from the trial court's ruling because implicit in the court's findings of fact, conclusions, and judgment is a determination that the court found much of Elnora's testimony to be less than credible. Had the questions been answered and had the answers contradicted Elnora's testimony regarding the letters, any impeachment effect would have been cumulative. A refusal to admit evidence is not reversible error unless the evidence would have changed the result. *School Dist. of Independence v. U.S. Gypsum Co.*, 750 S.W.2d 442, 448[3] (Mo.App. 1988). Upon this record, we will not convict the trial court of an abuse of discretion where it recognized Elnora's failings but, nevertheless, determined that the best interests of the child would be served by modifying visitation but not custody. Point II is rejected.

We affirm.

PARRISH, C.J., and CROW, P.J., concur.