In the Missouri Court of Appeals
 Western District

DANIEL YEE, Personal Representative
 )
of the Estate of THIC LEM TOY, )
 Respondent,
 )
v. ) WD84229
 )
SAMMY CHOI, SETO CHOI, and WING )
CHOI, ) FILED: December 14, 2021
 Appellants. )

 APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
 THE HONORABLE MARK A. STYLES, JUDGE

 BEFORE DIVISION THREE: LISA WHITE HARDWICK, PRESIDING JUDGE,
 GARY D. WITT AND EDWARD R. ARDINI, JR., JUDGES

 Sammy Choi, Seto Choi, and Wing Choi (collectively, “Appellants”) appeal

the circuit court’s judgment denying their motion to set aside the default

judgment entered against them on a petition filed by Daniel Yee, personal

representative of the Estate of Thic Lem Toy (“the Estate”). In the default

judgment, the court granted Yee’s request to distribute assets of an investment

club. Appellants contend the circuit court erred in finding that they failed to

demonstrate good cause to set aside the default judgment. For reasons explained

herein, we affirm.
 FACTUAL AND PROCEDURAL HISTORY

 Over 20 years ago, Harry Toy established the New Century Investment Club

(“the Club”). The eight original members of the Club were Harry Toy; Harry Toy’s

brother, Thic Lem Toy, and Thic Lem Toy’s spouse, Lui Gam Lau; Thic Lem Toy’s

son, Billy Choi, and Billy Choi’s spouse, Nancy Choi; Thic Lem Toy’s son, Sammy

Choi, and Sammy Choi’s spouse, Seto Choi; and Thic Lem Toy’s son, Wing Choi.

The Club’s investments are held in an account at TD Ameritrade. Harry Toy died

shortly after the Club was established. Lui Gam Lau died in June 2005, Billy Choi

died in March 2011, and Thic Lem Toy died in April 2016. No money has ever

been paid out of the Club to anyone.

 On June 21, 2018, Yee filed a three-count petition naming as defendants the

four surviving members of the Club, Nancy Choi, Sammy Choi, Seto Choi, and

Wing Choi, along with Thic Lem Toy’s five grandchildren, Betty Choi, Judy Choi,

Tony Choi, Simon Choi, and Sherman Choi. In Count I, Yee asked for an

accounting. He alleged that the Club was a partnership investment but no

partnership agreement was ever prepared and no written documents exist with

respect to its creation. Yee alleged that each of the eight members of the Club

held a 12.5% interest in the Club when the Club was established. He then set forth

how he believed the four deceased members’ interests in the Club passed to each

of their heirs pursuant to their will or intestate succession, if they had no will. Yee

asked the court to direct the partnership members of the Club to give an

 2
accounting to the Estate and to determine the interest of each partner in the Club.

In Count II, Yee asked that the court declare the Club dissolved.

 In Count III, Yee asked that the court wind up the affairs of the Club. As an

alternative to this request, Yee proposed that, because several members of the

partnership desired to continue the partnership, it would be reasonable to

distribute the assets in the TD Ameritrade account in kind to the heirs of Thic Lem

Toy to the extent of his interest and to distribute the assets in kind to any other

members of the partnership who desired to have their shares distributed. For

those members who did not desire to have their shares distributed, Yee requested

that they be allowed to leave their interest in the Club and to continue the Club as

a partnership.

 Nancy Choi, Judy Choi, Betty Choi, and Tony Choi all entered their

appearances in the case and waived service of process. A special process server,

Brent Burmeister, was appointed to serve Yee’s petition on Appellants. He served

Sammy Choi, Seto Choi, and their children, Simon Choi, and Sherman Choi, at

their residence on March 13, 2019, by leaving the summonses and copies of the

petition with Sherman Choi, who was over the age of 15 years old. The

summonses advised them:

 You are summoned to appear before this court and to file your
 pleading to this petition, copy of which is attached, and to serve a
 copy of your pleading upon the attorney for the Plaintiff/Petitioner at
 the above address all within 30 days after service of this summons
 upon you, exclusive of the day of service. If you fail to file your

 3
 pleading, judgment by default will be taken against you for the relief
 demanded in this action.

Burmeister attempted to serve Wing Choi at his residence several times between

May and July 2019. Even though Burmeister could see that someone was home,

no one ever answered the door. During one of Burmeister’s attempts to serve

Wing Choi, a man drove up to the residence and motioned for Burmeister to come

to the car. When Burmeister told the man that he was “an officer with the courts”

who serves process and was trying to find Wing Choi, the man told Burmeister,

“Do not beat on that door again,” before speeding away. Yee next attempted

service on Wing Choi by certified mail, but the mail notice was returned

unclaimed. The court then ordered that Wing Choi be served by publication. The

publication notice, which was published four times between March 12, 2020, and

April 2, 2020, advised Wing Choi:

 You are further notified that, unless you file an answer or other
 pleading or shall otherwise appear and defend against the aforesaid
 petition on the 1ST DAY OF MAY, 2020 at 9:30 AM at the JACKSON
 COUNTY COURTHOUSE, 415 E. 12TH STREET, 9TH FLOOR, KANSAS
 CITY, MO 64106, judgment by default will be rendered against you.

None of the Appellants filed an answer or took any action in the litigation.

 On June 8, 2020, Yee signed a stipulation with Nancy Choi, Tony Choi, Betty

Choi, and Judy Choi. The parties agreed that, as of June 30, 2018, the value of the

Club’s TD Ameritrade account was $1,797,321.24. The parties agreed that the

Estate should receive a distribution of 21.88% of the TD Ameritrade account and

that Nancy Choi should receive a distribution of 30.21% of the account.

 4
 On June 12, 2020, the court held an evidentiary hearing on Yee’s petition.

On June 23, 2020, the court entered its judgment. In its judgment, the court found

that Appellants were served, filed no responsive pleading, and were in default.

The court granted judgment by default as to Appellants1 and judgment by

stipulation as to the non-defaulting defendants, Nancy Choi, Tony Choi, Betty

Choi, and Judy Choi, and as to the petitioner, Yee.

 The court noted that, pursuant to the stipulation, the parties agreed to seek

relief under the provisions of Count III’s alternative proposal to distribute the

assets of the Club to the parties of the partnership, and Yee agreed to dismiss

without prejudice Count I, his request for an accounting, and Count II, his request

to dissolve the Club. Based on the parties’ stipulation, the allegations in the

petition, and the evidence presented at trial, the court determined the percentage

of ownership interest of each of Club’s members and the deceased members’

heirs. The court ordered that 21.87% of the TD Ameritrade account be distributed

to the Estate, 30.20% of the account be distributed to Nancy Choi, and the rest of

the account remain in the name of the Club.

 Over two months later, on September 3, 2020, Appellants filed a motion to

set aside the default judgment pursuant to Rule 74.05(d). In their motion,

Appellants argued that there was good cause for setting aside the default

judgment. Specifically, they asserted that “Nancy Choi and Daniel Yee have

1
 The court also granted judgment by default against Simon Choi and Sherman Choi. They did not
ask to set aside the default judgment and do not appeal.

 5
fraudulently convinced this Court to have shares of the family membership

distributed both to them and to the Estate.” Appellants alleged that Yee

misrepresented the nature of the Club as a Missouri partnership, “has offered no

legal evidence or documentation to support his position, and the only Defendants

who have consented to the distributions directly stand to benefit from such.” In a

footnote, Appellants stated that service was obtained on Sammy Choi and Seto

Choi while they were awaiting a decision from this court in a separate discovery

of assets proceeding involving the Estate. Appellants alleged that, because “the

two cases are related, and neither speaks English as their primary language, they

were unaware that the cases would proceed independent of each other and that

an Answer was required.”

 Appellants attached affidavits to their sur-reply to their motion to set aside

the default judgment. In their affidavits, Sammy Choi and Seto Choi averred that,

when they “received a copy of the paperwork from the Sheriff in this case,” they

believed that Yee and Nancy Choi “made up the story, and that it may be a scam.”

They alleged that TD Ameritrade had told Sammy Choi that only the four

surviving members of the Club, Sammy Choi, Seto Choi, Wing Choi, and Nancy

Choi, could do business for the Club and that the four deceased members “lost

their standing in the [C]lub once they were deceased.” Therefore, Sammy Choi

and Seto Choi did not believe Yee “could do anything with” the Club. They noted

that, after Billy Choi died in 2011 and Thic Lem Toy died in 2016, Nancy Choi and

 6
Daniel Yee asked TD Ameritrade to make a distribution from the Club’s account,

but TD Ameritrade denied their request.

 In his affidavit, Wing Choi averred that English is his second language and

that he did not receive a copy of the “paperwork” from the court. He alleged that

Yee and the Estate attorneys “made up the story.” Wing Choi alleged that, based

on what TD Ameritrade told Sammy Choi, he did not believe that Yee “could do

anything with” the Club. All three Appellants averred that they were “not familiar

with the American Court system and did not understand that [they] needed to file

a response, or the consequences if [they] did not file a response.” Additionally, all

three Appellants alleged that they did not intentionally mean to delay the matter

by not responding to the documents sooner.

 An evidentiary hearing was held. Sammy Choi testified that, after the

process server served the petition by giving a copy of it to his college-aged son,

he did not think the lawsuit was real because it “[s]eemed to be not like a

lawsuit.” Sammy Choi testified that he did not understand that he needed to file a

response to this petition “[b]ecause this whole thing is kind of like a scam.

Nothing to believe [sic] is true.”

 Sammy Choi testified that he hired counsel in this case only after TD

Ameritrade told him that he needed to do so because of the entry of the default

judgment. Before the default judgment was entered, he did not respond to the

petition because he did not believe that Yee, on behalf of the Estate, or Nancy

Choi could “get” anything out of the Club’s TD Ameritrade account. Based on

 7
what TD Ameritrade told him, he believed that the interest his father, Thic Lem

Toy, held in the Club was extinguished on his death and did not pass on to the

Estate. Sammy Choi testified that he believed Yee had “ma[d]e up phony

documents.”

 Sammy Choi admitted that he had been served with papers before in the

Estate’s discovery of assets action in February 2017 and that he understood, with

respect to that lawsuit, that he needed to hire an attorney to represent him. He

also acknowledged that, before he was served in this lawsuit concerning the Club,

he had received letters discussing the Club and this potential lawsuit from Yee’s

counsel in March and May 2018.2 In fact, Sammy Choi acknowledged that he had

“received plenty of correspondence that explained to [him] what was going to

happen before it happened.”

 In the March 2018 letter, Yee’s counsel included a memorandum explaining

what he believed were the interests of the Club members and his proposal for

distributing interests to living members and the deceased members’ heirs. In that

letter, Yee’s counsel stated that he intended to file a petition to wind up the Club if

the parties could not reach an agreement. The second letter, sent to Appellants in

May 2018, contained a copy of the petition that Yee eventually filed and had

served on Appellants. In the second letter, Yee’s counsel specifically advised

Appellants that he was planning to file the petition, asked Appellants to sign an

2
 Yee’s counsel originally sent the letters to Daniel Wheeler, the counsel who represented Sammy
Choi in the discovery of assets action. Wheeler forwarded the letters to Sammy and Seto Choi,
who did not retain him to represent them in this case.

 8
entry of appearance, informed them that if they did not execute and return the

entry of appearance that they would be served by the sheriff, and suggested that

they seek legal advice.

 Sammy Choi testified that he and the other Appellants “ignored [the

letters]. Because we cannot respond to them. Every time you respond to them,

they say you need a lawyer. When you get the lawyer, it costs you money and

time,” and it is “stressful to deal with them.” He continued, “Every time you meet

somebody, they say you need a lawyer. Same thing we tried to ask them about

my father’s estate. . . . Every time they ask you, you need a lawyer to represent

you.”

 Following Sammy Choi’s testimony, Seto Choi testified that her testimony

would be “[a]ll the same” as her husband’s testimony. Appellants’ counsel

represented that Wing Choi would testify “substantially the same way” as Sammy

Choi testified.

 After the hearing, the court entered its judgment denying Appellants’

motion to set aside the default judgment. In its judgment, the court found that the

summons served on Appellants advised them that if they failed to file a

responsive pleading, judgment by default would be taken against them; that

Appellants took no action to preserve their rights in this litigation before the

default judgment was entered; and that Sammy Choi and Seto Choi had been

served with another lawsuit related to the Estate, i.e., the discovery of assets

action, before being served with this one and had retained counsel to represent

 9
their interests in that suit. The court further found that Appellants had not stated

sufficient facts to show that their failure to answer or otherwise participate in this

litigation was due to a good faith mistake or negligence. The court found that,

instead, Appellants’ failure to participate in the litigation was “due to their beliefs

that the allegations in the Petition were ‘made up’ and as such, they chose to

ignore the pending litigation.” The court concluded that, under Missouri law,

Appellants did not establish good cause to set aside the default judgment and

denied their motion. Appellants appeal.

 STANDARD OF REVIEW

 We review the circuit court’s denial of a Rule 74.05(d) motion to set aside a

default judgment for an abuse of discretion. Vogel v. Schoenberg, 620 S.W.3d

106, 111 (Mo. App. 2021). An abuse of discretion occurs when the “ruling is

clearly against the logic of the circumstances then before the trial court and is so

unreasonable and arbitrary that the ruling shocks the sense of justice and

indicates a lack of careful consideration.” Id. (citation omitted). Because public

policy favors resolving cases on the merits, we accord more deference the circuit

court’s decision to set aside a default judgment and “are more likely to reverse a

judgment denying a motion to set aside a default judgment than one granting

relief.” Id. We defer to the circuit court’s credibility determinations and the

weight it gives the evidence. Hanlon v. Legends Hosp., LLC, 568 S.W.3d 528, 532

(Mo. App. 2019).

 10
 ANALYSIS

 In their two points on appeal, Appellants contend the circuit court abused

its discretion in denying their motion to set aside the default judgment.3 They

assert that they presented sufficient evidence of good cause to set aside the

judgment because their failure to file answers was due to negligence, which

resulted from their unfamiliarity with the legal system and their mistaken belief

concerning the validity of the summons and petition.

 Rule 74.05(d) provides that a default judgment may be set aside “[u]pon

motion stating facts constituting a meritorious defense and for good cause

shown,” as long as the motion to set aside is filed “within a reasonable time not

to exceed one year after the entry of the default judgment.” As the party seeking

to set aside the default judgment, Appellants had the burden to prove both a

meritorious defense and good cause. Vogel, 620 S.W.3d at 111. “The failure to

prove either element requires denial of a motion to set aside a default judgment.”

Id.

3
 In Point I, Appellants argue that the court abused its discretion in denying the motion to set aside
the default judgment against Sammy Choi and Seto Choi, and in Point II, they assert that the court
abused its discretion in denying the motion to set aside the default judgment against Wing Choi.
Because their arguments are substantially similar, we will address the points together.

 11
 The circuit court found that Appellants failed to prove good cause. Rule

74.05(d) states that “good cause” “includes a mistake or conduct that is not

intentionally or recklessly designed to impede the judicial process.” We “liberally

interpret” the phrase “good cause” “to include good-faith mistakes, and even

negligence, in failing to timely answer in order to prevent a manifest injustice or

to avoid a threatened one.” Vogel, 620 S.W.3d at 111 (citations and internal

quotation marks omitted). Negligence “occurs if a party's inadvertence,

incompetence, unskillfulness or failure to take precautions precludes him from

adequately coping with a possible or probable future emergency.“ Id. at 112

(citations and internal quotation marks omitted).

 Recklessness, however, does not constitute good cause for setting aside a

default judgment. Id. at 111. Recklessness “includes making a conscious choice

of a course of action, either with knowledge of the serious danger to others

involved in it or with knowledge of the facts which would disclose the danger to a

reasonable [person].” Id. at 111-12 (citations and internal quotation marks

omitted). Recklessness includes “[i]ntentional indifference, meaning that an

individual does not care about the consequences of his or her actions”;

essentially, it “involves a deliberate choice to risk the possibility of a default

judgment.” Id. at 112 (citations and internal quotation marks omitted).

 Appellants contend that they did not understand that they had to file an

answer or take any action in the lawsuit because they are unfamiliar with the legal

system, English is not their primary language, and the pendency of the Estate’s

 12
discovery of assets suit on appeal at the time they were served in this case caused

them to think that they did not need to file an answer. In its judgment, the circuit

court found that the summons that was served on all three Appellants specifically

advised them they had to respond to the petition within 30 days and that, if they

failed to file a responsive pleading, “judgment by default will be taken against you

for the relief demanded in this action.” The court also found that Sammy Choi

and Seto Choi had been served before in the Estate’s prior discovery of assets

action and had retained counsel to represent them in that case. Implicit in these

findings is that the court did not find credible Appellants’ contention that they

were unfamiliar with the legal system and did not understand, for whatever

reason, that they had to respond to this lawsuit or risk default. We defer to the

circuit court’s credibility determinations, both explicit and implicit. See Am. Eagle

Waste Indus., LLC v. St. Louis Cty., Mo., 463 S.W.3d 11, 27 (Mo. App. 2015) (citing

In re Marriage of Mapes, 848 S.W.2d 634, 638 (Mo. App. 1993), for the proposition

that the court’s judgment “can reveal the court’s implicit credibility

determinations” to which appellate courts must defer).

 Appellants next contend that their failure to respond to the petition or take

any action in the case until after the default judgment was entered was because

they mistakenly believed that the summons and petition were “not real,”

“phony,” and a “scam.” They argue that the manner in which they were served

led to this belief. All three Appellants were properly served, however. Sammy

Choi and Seto Choi make much of the fact that their summons and petition were

 13
left with their college-aged son when they were not home, but that is an

acceptable method of service under Rule 54.13(b)(1). Likewise, although Wing

Choi complains about “the lack of personal service on him,” the record indicates

that the reason he was not personally served was because he purposely evaded

both personal service and service by mail, leaving service by publication as the

only way to obtain service on him.4

 Sammy Choi and Seto Choi also assert that Burmeister allegedly did not tell

their son when he served him that they needed to hire an attorney. Sammy Choi

testified that, when he was served process in the Estate’s discovery of assets suit,

the process server told him that he needed to get an attorney, but that in this case,

Burmeister “just left a copy” of the papers with his son and “didn’t leave any

instructions.” Burmeister testified that, for the past 30 years that he has been a

process server, he “always explain[s]” what the papers are and tells the person he

is serving “that this is something they need to talk to their attorney about.” A

reasonable inference from Burmeister’s testimony is that he told Sherman Choi

the same thing when he served him the summonses and petition in this case.5

 Appellants further contend that they mistakenly believed that the summons

and petition were a scam because TD Ameritrade had denied Nancy Choi’s and

4
 The address at which Yee attempted personal service and service by mail on Wing Choi is the
same address listed for Wing Choi in the notice of appeal.

5
 Rule 54.13 does not require process servers to tell the people they are serving that they should
obtain the advice of counsel.

 14
Yee’s request for distributions in the past, and TD Ameritrade had told Sammy

Choi that a member’s interest in the Club was extinguished upon the member’s

death. Appellants, therefore, did not think that the Estate or Nancy Choi could

“get” anything out of the TD Ameritrade account.

 Appellants’ disagreement with the legal basis for Yee’s petition based on

TD Ameritrade’s past actions or what TD Ameritrade told Sammy Choi does not

explain why Appellants believed that the Jackson County Circuit Court summons

and the court-filed petition were a scam and could be ignored. Appellants had

received letters from Yee’s counsel in March and May 2018 notifying them about

this dispute, the Estate’s position, and the fact that the Estate planned to file a

petition in the circuit court to resolve the dispute if the parties could not reach an

agreement. Appellants had even received a copy of the same petition that was

later served on them. Sammy Choi’s testimony was that he chose to ignore the

letters from Yee’s counsel advising him of the dispute and the potential for a

lawsuit because he did not want to spend the time or money to hire a lawyer. A

reasonable inference from Sammy Choi’s testimony is that, because Appellants

did not want to incur the expense of hiring counsel and did not agree with the

legal basis for Yee’s petition, Appellants simply chose to also ignore the

summons and petition.

 As the circuit court indicated to the parties during the trial, Appellants’

reluctance to hire counsel to represent them in this case did not excuse them of

their duty to respond to the summons and petition. Appellants’ conscious

 15
decision to ignore the summons and petition was made with “knowledge of the

facts which would disclose the danger to a reasonable [person].” Vogel, 620

S.W.3d at 111-12 (citations and internal quotation marks omitted). Instead of

contacting Yee’s counsel or the circuit court to inquire about the validity of the

summons and petition or filing a responsive pleading disputing the merits of the

claims in the petition, Appellants made the “deliberate choice to risk the

possibility of a default judgment” by ignoring the summons and petition

altogether until after the default judgment was entered. Id. at 112 (internal

quotation marks and citations omitted). “Their conduct consisted of a conscious

choice to ignore the litigation and, as such, amounted to reckless behavior.”

Dozier v. Dozier, 222 S.W.3d 308, 314 (Mo. App. 2007) (citation omitted).

 Appellants’ conscious choice to ignore the summons and petition is what

distinguishes this case from Turner v. Gateway Bobcat of Missouri, Inc., 450

S.W.3d 444 (Mo. App. 2014), Saturn of Tiffany Springs v. McDaris, 331 S.W.3d 704

(Mo. App. 2011), and J.E. Scheidegger Co. v. Manon, 149 S.W.3d 499 (Mo. App.

2004), cases Appellants cite to argue that good cause exists here. In Turner, good

cause existed where the defendant’s failure to respond was due to the fact that

the summons and petition were inadvertently commingled with other papers and

misplaced. 450 S.W.3d at 448-49. In Saturn of Tiffany Springs, good cause

existed where the parties had two other lawsuits pending regarding the same

subject matter, the parties were in frequent contact discussing an agreement to

consolidate all three lawsuits and, despite knowing that defendant was

 16
represented by counsel, plaintiff chose not to provide defendant’s counsel notice

of the motion for default judgment. 331 S.W.3d at 710. In J.E. Scheidegger Co.,

good cause existed where defendants took action in their defense by moving to

dismiss the lawsuit within the 30-day period before default, answering discovery

requests, moving for summary judgment, and appearing on the day of trial ready

to proceed. 149 S.W.3d at 504-05. Unlike in those cases, Appellants here were

aware of the summons and petition and deliberately chose to take no action

whatsoever until after the default judgment was entered.

 The record supports the circuit court’s determination that Appellants did not

state sufficient facts to show that their failure to answer or otherwise respond was

due to a good faith mistake or negligence. Therefore, the court did not abuse its

discretion in finding that Appellants failed to demonstrate good cause for setting

aside the default judgment.6 Points I and II are denied.

6
 In their briefs on appeal, Appellants state several other reasons why they purportedly believed
the summons and petition were a scam, including: (1) “Yee failed to obtain the account involved
in the Discovery Action”; (2) “Yee failed to obtain the contingency fee he sought in the Discovery
Action”; (3) there were “large unexplained delay[s]” between the time the letters were sent to
Wheeler, the petition for accounting was filed, Appellants were served, and the default judgment
was entered; and (4) Seto’s name was misspelled as “Zeto” on the letters from Yee’s counsel and
on the summons and petition. Appellants did not assert any of these reasons in their affidavits or
in Sammy Choi’s trial testimony, and they argue them to support their claim of good cause for the
first time on appeal. “We will not convict a trial court of error on an issue that it had no chance to
decide.” Holmes v. Kansas City Pub. Sch. Dist., 571 S.W.3d 602, 613 (Mo. App. 2018) (citation
omitted).

 17
 CONCLUSION

 The judgment is affirmed.

 ____________________________________
 LISA WHITE HARDWICK, JUDGE
ALL CONCUR.